UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEORGE SALEMO,

                    Plaintiff,

            v.

U.S. SECRET SERVICE AGENT
MAUREEN MURPHY *et al.*,

                    Defendants.

11 Civ. 2525

**OPINION**

George Salemo, proceeding *pro se*, brings this action alleging that U.S. Secret Service Agent Maureen Murphy, U.S. Department of Agriculture Agent Bethanne Dinkins, and U.S. Probation Officer Marcela Bravo violated his constitutional rights during their investigation and arrest of him.

On September 27, 2012, the court dismissed Salemo's complaint but granted leave to amend. Salemo then filed his amended complaint on March 27, 2013. Defendants now move to dismiss the amended complaint.

The motion to dismiss is granted.

**The Complaint**

Salemo was suspected—and ultimately convicted—of presenting a forged $2.25-million U.S. Department of Agriculture Farm Service Agency grant agreement as collateral for a loan to his company, Global Alliance for

1

International Advancement, Ltd. ("GAIA").  In his complaint, Salemo alleges that he was the founder, incorporator, investor, and CEO of GAIA.

Salemo alleges that defendants pursued their investigation recklessly because of their personal contempt for him.  For example, he alleges that defendants took and encouraged others to take documents and hard drives from GAIA headquarters without a warrant.  Salemo alleges that when defendants did get a warrant, they "falsely applied for" it because the warrant listed "Intro World" as residing in the same office as GAIA.  Defendants allegedly replaced Salemo in his role at GAIA with another GAIA employee, Troy Sargent, and had Salemo locked out of GAIA's offices.  Defendants then allegedly allowed Sargent and others to gain unauthorized access to Salemo's and GAIA's bank accounts.  When Salemo attempted to initiate civil and criminal proceedings against Sargent and other GAIA employees, defendants allegedly interfered and had the charges dismissed.

Salemo also alleges that defendants orchestrated attacks on his reputation.  He claims that they authorized Sargent to contact Salemo's business associates, as well as the website Rip-Off Report, informing them that Salemo's enterprises were fraudulent.

Salemo contends that these events culminated in GAIA's bankruptcy.

Defendants also allegedly interfered with his personal property and housing in three ways.  First, Salemo alleges that defendants harassed his landlord until she gave them clothes from his apartment.  He alleges that

defendants did not return all of this property.  Second, he alleges that defendants told another landlord that Salemo was "an undesirable person" and then the landlord would not rent another apartment to him.  Third, he alleges that Agent Dinkins confiscated his personal effects when Salemo was booked but never returned those items.

Additionally, Salemo alleges that defendants interfered with his Fifth Amendment right to liberty while he was in prison.  He alleges that defendants kept him from being transferred to a halfway house because they informed prison officials that he would soon be indicted for forgery.  He also alleges that defendants falsely told prison officials that he harassed a woman, which resulted in Salemo being moved to disciplinary housing for ten days.

Finally, Salemo claims that Dinkins and Murphy "suborned" evidence at Salemo's trial.  Although it is very difficult to determine what Salemo intends to allege in this section of the complaint, he appears to list a series of allegations relating to evidence at his criminal trial that was either falsified or not appropriately disclosed by defendants.

He seeks compensatory and punitive damages totaling $58 million based on these alleged constitutional violations by federal agents under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

In Salemo's papers opposing the motion to dismiss, he not only repeats allegations from the complaint, but also adds new allegations.  And many of these new allegations do not relate to defendants named in the complaint.  In

general, a party is not permitted to use its reply to a dispositive motion as a vehicle for amending its complaint.  See Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998).  And the court's opinion dated September 27, 2012, alerted Salemo that the court would not allow him to supplement his complaint by adding extensive allegations in his opposition papers.  Thus, the court declines to consider these additional allegations.

## Discussion

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead sufficient facts to state a claim for relief that is plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In deciding a motion under Rule 12(b)(6), a court must accept as true the facts alleged in the complaint.  Id. But the court may consider documents attached to the complaint, incorporated by reference into the complaint, or known to and relied on by the plaintiff in bringing the suit.  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).  A *pro se* plaintiff "is entitled to a particularly liberal reading" of his complaint.  Lopez v. Jet Blue Airways, 662 F.3d 593, 596 (2d Cir. 2011). But even a *pro se* plaintiff must plead enough facts to state a claim for relief that is plausible on its face.  Johnson v. City of New York, 669 F. Supp. 2d 444, 448–49 (S.D.N.Y. 2009).

Claims from Original Complaint

The bulk of the claims in Salemo's amended complaint merely reiterate the claims in the original complaint. The court previously dismissed Salemo's claims based on the allegations that: (1) defendants orchestrated the removal of documents from GAIA's offices; (2) defendants locked him out of GAIA's offices; (3) defendants disclosed Salemo's criminal history or defamed him in other ways; (4) defendants caused GAIA's bankruptcy; (5) defendants interfered with ongoing criminal and civil actions against GAIA employees; (6) defendants orchestrated the election of a new CEO at GAIA; and (7) defendants accessed or allowed access to GAIA's and Salemo's bank accounts. Claims based on these allegations are again dismissed for the reasons stated in the court's opinion dated September 27, 2012.

False Statements in the Search Warrant Affidavit

Salemo alleges that defendants Dinkins and Murphy "improperly and falsely applied for" the warrant that they used to search the hard drives and documents seized from GAIA, thus violating Salemo's Fourth Amendment rights. He alleges that the affidavit states that "Intro World" was operated out of the same offices as GAIA, but that no such company exists. He further alleges that the affidavit falsely states that the seizure of evidence was necessary to prevent its destruction. Salemo attached the search warrant to the complaint and relied on it in making the allegations.

To show that false statements in a search warrant affidavit constitute a Fourth Amendment violation, a plaintiff must allege (1) that the false statement was made knowingly and intentionally or with reckless disregard for the truth and (2) that the false statement was necessary to the finding of probable cause. Franks v. Delaware, 438 U.S. 154, 155–56 (1978).

Here, accepting that the statements in the affidavit were false, Salemo does not contend that these false statements were necessary to the finding of probable cause or that the warrant would not have issued without these allegedly false statements.  He only offers the conclusory allegation that defendants improperly applied for the warrant.  Even construing his claims liberally, Salemo has not stated a plausible claim that the affidavit violated his Fourth Amendment rights.

Seizure of Personal Belongings from Salemo's Apartment

Salemo alleges that defendants conducted a warrantless seizure of his property in violation of the Fourth Amendment by convincing his landlord to give them clothes and documents from Salemo's apartment.  But the exhibits attached to Salemo's complaint show that Salemo had abandoned all personal property that he left in the apartment.  Salemo's lease had expired and the landlord had leased the apartment to a new tenant, but Salemo and his son had ignored the landlord's requests to collect his belongings.  The landlord told Salemo that she would throw away any property left in the apartment after

December 26, 2010, and it was only after this deadline passed that the landlord gave the belongings to defendants.

A plaintiff cannot show a Fourth Amendment violation based on the search or seizure of abandoned property.  Gudema v. Nassau County, 163 F.3d 717, 722 (2d Cir. 1998).  Likewise, a plaintiff has no Fourth Amendment interests in property left after his rental period has expired.  Cf. Abel v. United States, 362 U.S. 217, 241 (1960); United States v. Parizo, 514 F.2d 52, 54 (2d Cir. 1975).  Accordingly, Salemo fails to state a claim for a Fourth Amendment violation based on the search and seizure of the property he abandoned after his lease expired.

Failure to Return Personal Property after Booking

Salemo alleges that Agent Dinkins took his personal effects when he was booked but that Dinkins never returned those items.  He alleges that this violates his Fifth Amendment right to due process.

To sustain an action for deprivation of property without due process of law, a plaintiff must (1) identify a property right; (2) show that the state has deprived him of that right; and (3) show that the deprivation was effected without due process.  Local 342, Long Island Pub. Serv. Employees v. Town Bd. of Town of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994).  But even if a plaintiff makes this showing, "the negligent or intentional deprivation of property through the random and unauthorized acts of a state or federal

employee does not constitute a deprivation of due process if 'a meaningful postdeprivation remedy for the loss is available.'" <u>Stuto v. Fleishman</u>, 164 F.3d 820, 825 (2d Cir. 1999) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984)).

Here, there can be little doubt that Salemo has a property interest in his tangible possessions that were allegedly taken by defendants.  But Salemo has at least two post-deprivation remedies available to him—he could have sued the Government under the Federal Tort Claims Act, <u>see e.g.</u>, <u>Friedman v. Young</u>, 702 F. Supp. 433, 437 (S.D.N.Y. 1988), or he could have moved for the return of his property under Federal Rule of Criminal Procedure 41(g). Because Salemo had these remedies available, he cannot make out a claim for violation of his due-process rights.

<u>Delayed Transfer to Halfway House</u>

Salemo alleges that as a result of defendants' calls to Salemo's case manager in prison, Salemo only received sixty days in a halfway house, rather than six months.  He alleges that this violates his Fifth Amendment rights.

To state a <u>Bivens</u> claim, a plaintiff must have a constitutionally protected interest that was violated by defendants.  But a plaintiff does not have a constitutionally protected interest in release to a halfway house.  <u>See</u> <u>Douvos v. Quintana</u>, 382 F. App'x 119, 121 (3d Cir. 2009).  Accordingly, Salemo did not have a protected interest in release to a halfway house, and thus he has failed to state a viable claim based on this allegation.

Temporary Transfer to Disciplinary Housing

Salemo alleges that defendants violated his constitutional rights by falsely informing prison officials that he was harassing a woman, resulting in Salemo being sent to disciplinary housing for ten days.

Again, Salemo has failed to state a claim because he has not shown that defendants violated a constitutionally protected interest.  The Second Circuit has held that confinement in disciplinary housing for less than 101 days under normal conditions does not implicate a cognizable liberty interest.  See Bunting v. Nagy, 452 F. Supp. 2d 447, 455 (S.D.N.Y. 2006) (collecting cases).  On this point, Salemo had no constitutionally protected interest that was violated.

Evidence at Salemo's Criminal Trial

The court interprets Salemo's complaint to allege that defendants falsified evidence or failed to disclose exculpatory evidence at his criminal trial. But a plaintiff may not assert a Bivens action that necessarily implies that his criminal conviction was wrongful if his conviction has not been reversed or invalidated.  Heck v. Humphrey, 512 U.S. 477, 487 (1994).  Here, Salemo's criminal conviction is still valid, see United States v. Salemo, No. 11 Crim. 65 (S.D.N.Y.), so he may not pursue a constitutional tort claim based on falsified evidence or failure to disclose exculpatory evidence.

9

**Conclusion**

The motion to dismiss is granted, and the complaint is dismissed in its entirety.  Salemo's motion for extension of time to oppose the motion to dismiss, document number 52, is granted.

This opinion resolves the motions listed as document numbers 50 and 52 in case 11 Civ. 2525.

So ordered.

Dated:  New York, New York
   February 28, 2014

            Thomas P. Griesa
            United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/28/14

10

Mailed from chambers:

George P. Salemo
22891-008
FCI Butner Low
Federal Correctional Institution
P.O. Box 999
Butner, NC  27509